# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**KATHERINE NOVOTNY**
**844 Aldino Stepney Rd.**
**Aberdeen, MD 21001**

**SUE BURKE**
**310 Janet Rd.**
**Reisterstown, MD 211366**

**ESTHER ROSSBERG**
**6311 Wallis Avenue**                    **Case No.**
**Baltimore, MD 21215**

**MARYLAND SHALL ISSUE, INC.**
**9613 Harford Rd., Ste C #1015**
**Baltimore, Maryland 21234-2150 20852**

**SECOND AMENDMENT**
**FOUNDATION**
**12500 N.E. Tenth Place,**
**Bellevue, WA 98005 and**

**FIREARMS POLICY COALITION**
**5550 Painted Mirage Rd.**
**STE 320**
**Las Vegas, NV 89149**

 *Plaintiffs,*

                    **v.**

**WESLEY MOORE, in his official**
**capacity as Governor of Maryland,**

**ALISON M. HEALEY, in her official**
**capacity as State's Attorney for**
**Harford County, Maryland,**

**SCOTT D. SHELLENBERGER, in his**
**official capacity as State's Attorney for**
**Baltimore County, Maryland,**

1

**IVAN J. BATES, in his official capacity as State's Attorney for Baltimore City, Maryland,**

**COL. ROLAND L. BUTLER, JR., in his official capacity as Superintendent of the Maryland State Police,**

**PAUL J. WIEDEFELD, in his official capacity as Secretary of Transportation, and**

**JOSHUA KURTZ, in his official capacity as Secretary of Natural Resources**

    *Defendants.*

## COMPLAINT FOR DECLARATORY AND EQUITABLE RELIEF AND ATTORNEY'S FEES AND COSTS

COME NOW, the Plaintiffs, through counsel, and sue the Defendants, and for cause state as follows:

### INTRODUCTION

1.      On, April 10, 2023, the General Assembly of Maryland enacted Senate Bill 1 ("SB1"), and Governor Wes Moore, signed SB1 into law on May 16, 2023. SB1 goes into effect on October 1, 2023. SB1 was enacted for the avowed purpose of responding to the Supreme Court's decision in *New York State Rifle Pistol Association v. Bruen*, 142 S.Ct. 2111 (2022), by restricting the locations that persons with Maryland wear and carry permits may legally exercise their constitutional right to wear, carry, or transport firearms. It does so in ways that are fundamentally

inconsistent with the Second Amendment as clearly articulated in the Supreme Court's decision in *Bruen*.

2.      In addition to the most recent enactment in SB 1, Maryland already restricts the Second Amendment right of ordinary, law-abiding citizens to carry in other ways as well, including on and at State owned or controlled mass transit facilities and in State parks, State forests, and State Chesapeake forest lands.

3. The individual Plaintiffs are ordinary, law-abiding citizens. Each of the individual Plaintiffs has a wear and carry permit issued by the Maryland State Police. The organizational Plaintiffs each has members who likewise possess such carry permits. In this lawsuit, Plaintiffs focus on the provisions of SB1 or other State law that impose particularly egregious restrictions on the Second Amendment right to bear arms. To that end, Plaintiffs challenge SB1's restrictions on carrying on private property open to the public, restaurants that are licensed to serve alcohol, certain health care facilities, and museums, and Maryland's existing restrictions on carrying on or at mass transit facilities and in State parks, State forests, and State Chesapeake forest lands. The Second Amendment does not countenance these restrictions, and this Court should enter judgment enjoining them.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this Complaint seeks relief afforded by 42 U.S.C. § 1983, for past, continuing, and imminent violations of Plaintiffs' rights arising under the United States Constitution. Defendants reside or are otherwise found in the District of Maryland. The events, actions, and omissions challenged in this Complaint arise in Maryland. Venue is properly in this Court in this matter pursuant to 28 U.S.C. § 1391.

3

**CHALLENGED PROVISIONS**

**SB 1**

5.     In Maryland, wearing, carrying and transporting any handgun "on or about the person" or in a vehicle is generally prohibited, subject to a few exceptions. *See* MD Code, Criminal Law, § 4-203(a), (b). One of the exceptions to this broad ban is a permit. *Id.* § 4-203(b)(2). Permit holders may "wear, carry, or transport [a] handgun" when they have a permit issued under "Title 5, Subtitle 3 of the Public Safety Article." *Id.* SB1 specifically targets permit holders and restricts where individuals—who have met Maryland's background check and training requirements—are allowed to carry.

6.     Maryland wear and carry permits are issued by the Maryland State Police pursuant to MD Code, Public Safety, § 5-306. All the individual plaintiffs in this suit are Maryland permit holders. The members of MSI, SAF, and FPC on whose behalf these organizations bring this suit are likewise Maryland permit holders. Permit holders in Maryland are fingerprinted, thoroughly investigated by the State Police and, unless training-exempt, receive at least 16 hours of training. MD Code, Public Safety, § 5-306(a)(5), (6). These training requirements include a mandatory course of live fire in which the applicant must achieve a specific minimum score. COMAR § 29.03.02.05 C.(4). Of the 43 "shall issue" States identified in *Bruen*, 142 U.S. at 2123 n.1, only Illinois requires as much training as Maryland. Permit holders, nationwide, are disproportionately law-abiding. *See* Philip J. Cook et al., *Gun Control After* Heller, 56 U.C.L.A. L. Rev. 1041, 1082 (2009). Maryland wear and carry permits may be and are issued by the State Police to non-Maryland residents, including to members of MSI, SAF and FPC.

7.     SB1 adds two new MD Code Sections to the MD Criminal Law Article of the Maryland Code, Section 4-111 and Section 6-411. These additional Sections regulate where permit

4

holders may wear, carry, or transport a firearm. A "firearm" is defined by Section 4-111(a)(3), and Section 6-411(a)(3), as enacted by SB1, to include all "firearms" as defined by MD Code, Criminal Law, § 4-104. That definition includes all modern handguns and long guns.

8.     In Section 4-111, the State has set out three categories of locations in which all non-exempt persons may not wear, carry or transport a firearm. The first category is what Section 4-111 defines as "area[s] for children and vulnerable individuals, which include "(1) a preschool or prekindergarten facility and its grounds, (2) a private primary or secondary school or its grounds, and (3) a health care facility." Section 4-111(a)(2). The second category is "government or public infrastructure area[s]." Section 4-111(a)(4). The third category is what Section 4-111 defines as "special purpose area[s]," which includes "(i) a location licensed to sell or dispense alcohol * * * for on–site consumption; (ii) a stadium; (iii) a museum; (iv) an amusement park, (v) a racetrack, or (vi) a video lottery facility, as defined in § 9–1A–01 of the state government article." Of these areas, plaintiffs challenge the bans on firearms in or at "(i) a location licensed to sell or dispense alcohol * * * for on–site consumption" and in or at "(iii) a museum." Section 4-111(a)(8).

9.   Individuals may not wear, carry, or transport firearms in these three categories of locations. Section 4-111(c), (d)(1), (e). A person who willfully violates the prohibition on wearing, carrying or transporting a firearm in these areas "is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both." Section 4-111(f).

10.     Subsection 4-111(b), as enacted by SB1, creates exceptions from the prohibitions set forth in Section 4-111. None of the individual plaintiffs in this case qualify for any exception set forth in Section 4-111(b), as enacted by SB1.

11.     Plaintiffs do not challenge the prohibitions in all these areas, instead, Plaintiffs challenge only a limited subset that impose particularly egregious restrictions on their Second Amendment right to bear arms.

12.     Plaintiffs challenge the prohibition on carrying in "a health care facility," which is included as an "area for children and vulnerable individuals" where firearms are prohibited. Section 4-111(a)(2)(iii), as enacted by SB1, defines health care facilities by cross-reference to Section 15-10B-01(g)(1), (2), (3) and (4), of the Insurance Article of the Maryland Code. Section 15-10B-01(g)(1) refers to a "hospital" which is defined by a cross-reference to § 19-301 of the Health-General Article to mean "an institution that: (1) Has a group of at least 5 physicians who are organized as a medical staff for the institution; (2) Maintains facilities to provide, under the supervision of the medical staff, diagnostic and treatment services for 2 or more unrelated individuals; and (3) Admits or retains the individuals for overnight care." Section 15-10B-01(g)(2) refers to a "related institution," which is defined by a cross-reference to § 19-301 of the Health-General Article as "an organized institution, environment, or home that: (i) Maintains conditions or facilities and equipment to provide domiciliary, personal, or nursing care for 2 or more unrelated individuals who are dependent on the administrator, operator, or proprietor for nursing care or the subsistence of daily living in a safe, sanitary, and healthful environment; and (ii) Admits or retains the individuals for overnight care." Section 15-10B-01(g)(3) refers to an "ambulatory surgical facility or center which is any entity or part thereof that operates primarily for the purpose of providing surgical services to patients not requiring hospitalization and seeks reimbursement from third party payors as an ambulatory surgical facility or center." Section 15-10B-01(g)(4) refers to "a facility that is organized primarily to help in the rehabilitation of disabled individuals."

13.     The ban on the wear, carry and transport in health care facilities widely and adversely affects the right to wear, carry, and transport a firearm publicly by physically vulnerable persons who may be least able to protect themselves and thus may be most in need of armed self-defense. It is for these reasons that these bans are singled out for challenge in this suit.

14.     Plaintiffs additionally challenge the prohibition on the wear, carry or transport of a firearm in two so-called "special purpose area[s]": locations licensed to sell or dispense alcohol for on-site consumption and museums. Section 4-111(a)(8). These two provisions most widely affect the fundamental constitutional right to carry in the everyday lives of Plaintiffs and thus are singled out for challenge in this suit.

15.     Section 6-411, as enacted by SB1, bans the wear, carry and transport of firearms in a different manner than the outright prohibitions in Section 4-111. This provision alters the default rules for carrying, wearing, or transporting firearms in Maryland for the first time in its history.

16.     Section 6-411(c) is the dwelling presumption. This subsection provides that "a person wearing, carrying, or transporting a firearm may not enter or trespass in the dwelling of another unless the owner or the owner's agent has given express permission, either to the person or to the public generally, to wear, carry, or transport a firearm inside the dwelling."  Section 6-411(a)(2)(i) defines "dwelling" for purposes of Section 6-411 to "mean[] a building or part of a building that provides living or sleeping facilities for one or more individuals." "[A] person who willfully violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both." Section 6-411(e). Plaintiffs do not challenge Section 6-411(c).

17.     Section 6-411(d) extends the anti-carry default rule to all privately owned buildings open to the public in the State. This subsection provides that "a person wearing, carrying, or

transporting" a firearm may not: "(1) enter or trespass on property unless the owner or the owner's agent has posted a clear and conspicuous sign indicating that it is permissible to wear, carry, or transport a firearm on the property; or (2) enter or trespass on property unless the owner or the owner's agent has given the person express permission to wear, carry, or transport a firearm on the property." Section 6-411(a)(6) defines the term "property" for purposes of these provisions as "a building" and states that this term "does not include the land adjacent to a building." "[A] person who willfully violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 1 year or a fine not exceeding $1,000 or both." Section 6-411(e). Plaintiffs challenge the entirety of Section 6-411(d) as it makes public carry by permit holders impractical, extraordinarily burdensome, and unsafe. Section 6-411(d) effectively nullifies the "general right" to carry in public by permit holders protected by the Second Amendment.

**MD Code, Transportation, § 7-705(b)(6)**

18.     MD Code, Transportation, § 7-705(b)(6), provides that "[i]t is unlawful for any person to engage in any of the following acts in any transit vehicle or transit facility, designed for the boarding of a transit vehicle, which is owned or controlled by the [Maryland Mass Transit] Administration [of the Maryland Department of Transportation] or a train owned or controlled by the Administration or operated by a railroad company under contract to the Administration to provide passenger railroad service: * * * (6) Carry or possess any explosives, acids, concealed weapons or other dangerous articles." MD Code, Transportation, § 7-705(e), provides that "[e]xcept as provided in subsection (f) of this section, any person who violates any provision of this section is guilty of a misdemeanor and is subject to a fine of not more than $500 for each offense.

19.     Within the meaning of MD Code, Transportation § 7-705(b), the Maryland Department of Transportation, Mass Transit Administration owns or controls transit facilities and

transit vehicles used for (1) commuter and local bus transit services in the Baltimore area, (2) the Metro Subway services in Baltimore area, (3) Light Rail services in Baltimore, and (4) weekday MARC commuter train service between Baltimore and Washington, D.C. Within the meaning of MD Code, Transportation § 7-705(b), the Maryland Department of Transportation and Mass Transit Administration also contracts with a private railroad company to provide passenger railroad service on MARC commuter trains that travel through Frederick and Montgomery Counties, Maryland, with stops in Maryland. Plaintiffs challenge Section 7-705(b)(6) in so far as it denies ordinary, law-abiding citizens their Second Amendment right to carry firearms in public by forbidding permits holders from possessing, wearing, carrying or transporting a firearm in and at such transit vehicles or facilities.

**Department of Natural Resources Regulations[1]**

20.      The Maryland Department of Natural Resources has promulgated a regulation, codified at COMAR 08.07.01.04, which provides in subsection B. that "[e]xcept as provided in § C and § D of this regulation, possession or use of weapons or firearms by an individual other than a law enforcement officer is prohibited in all State forests."  Subsection C of this regulation provides that "[t]arget shooting is permitted only at designated shooting ranges. The regulations governing the use of these ranges shall be posted and strictly observed."  Subsection D of this regulation

---

[1] The Fourth Circuit's decision in *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), which addressed restrictions on firearms in a national park area, is no longer controlling or persuasive precedent in light of the Supreme Court's decision in *Bruen. See Bruen*, 142 S.Ct. at 2124 (abrogating *Masciandaro* and decisions of other courts that had applied a "two step" means-ends or intermediate scrutiny to sustain restrictions on firearms). *See also Bruen*, 142 S.Ct. at 2126-27 & n.4 (rejecting this lower court line of cases and mode of analysis).

provides that "[e]xcept when legally hunting or legally target shooting, an individual may not discharge a firearm on land or waters owned or controlled by the Service." Subsection E of this regulation further provides that "[f]irearms shall be unloaded . . . when in a State forest campsite." Nothing in these regulations permits the carry of a firearm by a permit holder other than when legally hunting or legally target shooting. No provision in this regulation allows the wear and carry of a firearm for lawful self-defense by a permit holder. Plaintiffs challenge COMAR 08.07.01.04 in so far as it denies ordinary, law-abiding citizens their Second Amendment right to carry firearms in public by forbidding permits holders from possessing, wearing, carrying, or transporting a firearm in State forests. SB 1 does not purport to regulate or limit the wear, carry, transport or possession of firearms by permit holders in State forests.

21.    The Maryland Department of Natural Resources has promulgated a regulation, codified at COMAR 08.07.01.14, which provides in subsection B. that "[e]xcept as provided in §§ C and D of this regulation, possession or use of weapons or firearms by an individual other than a law enforcement officer is prohibited in Chesapeake Forest Lands." Subsection C of this regulation provides that "[t]arget shooting is permitted only at designated shooting ranges. The regulations governing the use of these ranges shall be posted and strictly observed." Subsection D of this regulation provides that "[e]xcept when legally hunting or legally target shooting, an individual may not discharge a firearm on land or waters owned or controlled by the Service." Subsection E of this regulation further provides that "[f]irearms shall be unloaded . . . when in a Chesapeake Forest camping area in accordance with Regulation .07 of this chapter." Nothing in these regulations permits the carry of a firearm by a permit holder. No provision in this regulation allows the wear and carry of a firearm for lawful self-defense. Plaintiffs challenge COMAR 08.07.01.14 in so far as it denies ordinary, law-abiding citizens their Second Amendment right to carry firearms in public

10

by forbidding permits holders from possessing, wearing, carrying or transporting a firearm in State Chesapeake forest lands.

21.     The Maryland Department of Natural Resources has promulgated a regulation, codified at COMAR 08.07.06.04, which provides in subsection B. that "[e]xcept as provided in Regulation .03 of this chapter and in C and D of this regulation, an individual other than a law enforcement officer may not possess a weapon in a State park. The Service may approve an exception for an archery range, firearms range, or an exhibition."   Subsection C of this regulation provides that "[d]uring hunting season, a licensed hunter may carry firearms and bows and arrows across State parks in order to get to hunting areas or to other State or private property which is open to hunting. The firearms shall be carried unloaded and cased, or carried unloaded with breech open or broken. Arrows shall be carried in a quiver or case." Subsection D of this regulation provides that "[t]arget shooting is permitted at designated shooting ranges. The regulations governing the use of these ranges shall be posted and strictly observed." Nothing in these regulations permits the carry of a firearm by a permit holder. No provision in this regulation allows the wear and carry of a firearm for lawful self-defense. Plaintiffs challenge COMAR 08.07.06.04 in so far as it denies ordinary, law-abiding citizens their Second Amendment right to carry firearms in public by forbidding permits holders from possessing, wearing, carrying, or transporting a firearm in State parks. SB 1 does not purport to regulate or limit the wear, carry, transport or possession of firearms by permit holders in State parks.

**PARTIES**

**Plaintiffs**

22.     Plaintiff KATHRINE NOVOTNY is a Maryland resident and is a member, Vice President and Treasurer of Plaintiff Maryland Shall Issue, Inc. ("MSI"). She is also a member of

Plaintiff Second Amendment Foundation ("SAF") and Plaintiff Firearms Policy Coalition ("FPC"). Since March of 2022, she has possessed a Maryland wear and carry permit for the purpose of self-defense and was issued that permit prior to the decision in *Bruen* for a "good and substantial reason" by the Maryland State Police pursuant to MD Code, Public Safety, 5-306(b)(6)(ii). With her carry permit, she has regularly carried her concealed firearm at and in multiple restaurants licensed to serve alcohol for on-site consumption, including Texas Roadhouse in Fallston, Chili's in Bel Air, Outback in Bel Air, Old South Smokehouse in Port Deposit, Great American Steakhouse in Aberdeen, Bistro 91 in Finksburg, Main Street Tower in Bel Air, and Chopstix in Forest Hill, but never consumes alcohol while doing so. With her permit, she regularly carries her personal firearm when she enters stores and other privately owned buildings that are otherwise open to the public. She has every intention and desire to continue to carry her personal firearm in and at all these locations in the future but she will decline to do so because of the credible fear of arrest and prosecution after October 1, 2023, the effective date of SB1.

23.     Plaintiff SUE BURKE IS a Maryland resident, the Secretary of MSI and an individual member of Plaintiff MSI. She is also a member of Plaintiff SAF and Plaintiff FPC.  Since 2022, she has possessed a Maryland wear and carry permit for the purpose of self-defense. With her carry permit, she has regularly carried her concealed firearm at and in multiple restaurants licensed to serve alcohol for on-site consumption, including without limitation Applebee's, Olive Garden, and Forbidden City restaurants in Westminster, Bare Bones and Kelsey's Restaurant, Irish Pub & Banquet Room, and La Palapa Grill & Cantina in Ellicott City, MD, Jarrettsville Manor Memorial VFW Post 8672, Jarrettsville, MD, Lt. Peter G Zouck VFW Post 521, Owings Mills, MD, and Yingling-Ridgely Post #7472, Ellicott City, MD  American Legion Post #17 – Edgewood, MD, and American Legion Harford Post #39, Bel Air, MD, but never consumes alcohol while doing so. With

her permit, she regularly carries her personal firearm when she enters stores and other privately owned buildings that are otherwise open to the public. With her permit, she regularly carries her personal firearm in multiple private museums, including the Annapolis Maritime Museum, Babe Ruth Birthplace and Museum, Baltimore Museum of Industry, Baltimore Streetcar Museum, B & O Railroad Museum, Calvert Marine Museum, the Baltimore Museum of Art, and the Chesapeake Maritime Museum. She has every intention and desire to continue to carry her personal firearm in and at all these locations in the future but she will decline to do so because of the credible fear of arrest and prosecution after October 1, 2023, the effective date of SB1.

24. Plaintiff SUE BURKE has also regularly visited State parks, including Patapsco Valley State Park, Cunningham Falls State Park, Swallow Falls State Park, Assateague State Park, and Snow Hill State Park. She has also visited Pocomoke State Forest and Potomac-Garrett State Forest. She has visited Chesapeake forest lands, including Chesapeake Forest, Snow Hill (WR-27 and WR-40). She has not visited State parks, State forests, or State Chesapeake forest lands while armed because of the regulations promulgated by the Department of Natural Resources barring such carry but would do so but for those regulations. She fully intends to carry a firearm with her Maryland carry permit in State parks, State forests and State Chesapeake forest lands but has declined to do so because of the credible fear of arrest and prosecution for violating these regulations.

25. Plaintiff ESTHER ROSSBERG is a Maryland resident, and is a member of MSI, SAF and FPC. Since 2022, she has possessed a Maryland wear and carry permit for the purpose of self-defense. With her carry permit, plaintiff Esther Rossberg has regularly carried her concealed firearm while at multiple "health care facilities" as that term is defined by SB1, including visits to her personal physician at a hospital in Baltimore and to her cardiologist at another hospital in

Baltimore. These hospitals are "health care facilities" within the meaning of MD Code, Insurance, § 15-10B-01(g)(1), as incorporated by Section 4-111(a)(2)(iii) and Section 4-111(c) of SB1. With her permit, she has regularly carried her personal firearm at multiple restaurants licensed to serve alcohol for on-site consumption, including Dougies Restaurant in Pikesville, MD, the Taam Thai Restaurant in Pikesville, the KB Grill and Wok restaurant in Baltimore, and the Serengeti restaurant in Baltimore, but when she does so she never consumes alcohol. With her permit, she regularly carries her personal firearm when she enters stores and other privately owned buildings that are otherwise open to the public. She has every intention and desire to continue to carry her personal firearm in and at all these areas in the future but she will decline to do so because of the credible fear of arrest and prosecution after October 1, 2023, the effective date of SB1.

26.     Plaintiff ESTHER ROSSBERG regularly uses the Baltimore Metro rail system to travel from the Reisterstown Plaza Station to various stations in the City of Baltimore, including the Charles Center and Johns Hopkins Hospital stations. But for the bans imposed by MD Code, Transportation, § 7-705(b)(6), challenged in this suit, she would travel on the Baltimore METRO rail system while armed and fully intends to do so in the future but has declined to do so because of the credible fear of arrest and prosecution due to these bans.

27.     Plaintiff MARYLAND SHALL ISSUE, INC., is a Maryland corporation, located at 9613 Harford Rd., Ste C #1015, Baltimore, MD 21234. MSI is an Internal Revenue Service Section 501(c)(4), non-profit, non-partisan, all-volunteer membership organization with approximately 3460 members statewide. MSI is dedicated to the preservation and advancement of gun owners' rights in Maryland. It seeks to educate the community about the right of self-protection, the safe handling of firearms, and the responsibility that goes with carrying a firearm in public. The purposes of MSI include promoting the exercise of the right to keep and bear arms and education, research,

14

and legal action associated with the constitutional right to privately own, possess and carry firearms. Each of the named individual plaintiffs is a member of MSI.

28.     MSI has one or more members who live in Maryland and who travel throughout Maryland in the ordinary course of their lives, and who also possess a Maryland wear and carry permit issued by the Maryland State Police. MSI has at least one member who is a permit holder and regularly carry firearms in and at each of the locations challenged in this Complaint, including at a rehabilitation facility, as defined at MD Code, Insurance, § 15-10B-01(g)(4), and at a surgical center, as defined at MD Code, Insurance, § 15-10B-01(g)(3). These members of MSI with carry permits intend to continue to possess and carry firearms at such locations, but reasonably fear prosecution if they do so after October 1, 2023. MSI has one or more members with carry permits who regularly visit State parks and State forests, including State Chesapeake forest lands, and would carry a firearm at these locations but for the regulatory bans imposed by the Department of Natural Resources. MSI has at least one member with a carry permit who regularly uses public transportation facilities operated by the Department of Transportation, Mass Transit Administration and would possess, wear, carry or transport a firearm while doing so but for the ban imposed by MD Code, Transportation, § 7-705(b)(6). MSI brings this action on behalf of its members who have Maryland wear and carry permits, a class which includes each of the individual named plaintiffs in this case.

29.     Plaintiff SECOND AMENDMENT FOUNDATION is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutionally protected right to possess firearms and firearm ammunition, and the consequences of gun control. SAF has over 720,000 members and supporters nationwide, including thousands of members in Maryland.

SAF brings this action on behalf of those members with a Maryland wear and carry permit, including the named Plaintiffs herein.

30.     SAF's members are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. SAF has at least one member who is a permit holder and who regularly carries firearms in and at each of the locations, challenged in this Complaint, at which firearms will be banned by SB1 as of October 1, 2023, the effective date of SB1. These SAF members reasonably fear prosecution if they do so after October 1, 2023. SAF has one or more members with carry permits who regularly visit State parks, State forests, and State Chesapeake forest lands, and would carry a firearm at these locations but for the administrative regulatory bans imposed by the Defendant Department of Natural Resources. SAF has members with carry permits who regularly use public transportation facilities operated by the Department of Transportation, Mass Transit Administration, and would possess, wear, carry or transport a firearm while doing so but for the ban imposed by MD Code, Transportation, § 7-705. Each of the individual plaintiffs is a member of SAF.

31.     Plaintiff FIREARMS POLICY COALITION, INC., is a non-profit organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside the State of Maryland.

32.     FPC brings this action on behalf of those members with a Maryland wear and carry permit, including the named plaintiffs herein. FPC's members are adversely and directly harmed by

Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. FPC has at least one member who is a permit holder and who carries firearms in and at each of the locations, challenged in this Complaint, at which firearms will be banned by SB1 as of October 1, 2023, the effective date of SB1. These FPC members fully intend to continue to carry at these locations challenged in this Complaint but reasonably fear prosecution if they do so after October 1, 2023. FPC has one or more members with Maryland carry permits who regularly visit Maryland State parks, State forests, and State Chesapeake forest lands, and would possess, wear, carry or transport a firearm at these locations but for the administrative regulatory bans imposed by the Defendant Department of Natural Resources. FPC has members with carry permits who regularly use public transportation facilities operated by the Maryland Department of Transportation and would carry a firearm while doing so but for the bans imposed by MD Code, Transportation, § 7-705. Each of the individual plaintiffs is a member of FPC.

**Defendants**

33.     The Defendant, WESLEY MOORE, is the Governor of Maryland and, as head of the executive branch of the State of Maryland, is responsible for the enforcement of State laws and regulations issued by State regulatory agencies, including the Department of Transportation and the Department of Natural Resources. Additionally, as Governor, Moore may direct the Attorney General to undertake criminal investigations and prosecutions. Md. Const. art V., § 3; *see also In re Special Investigation No. 244*, 459 A.2d 1111, 1115 (Md. 1983). The Defendant ALISON M. HEALEY is the State's Attorney for Harford County, Maryland, and as such, is tasked with "prosecut[ing] and defend[ing] on the part of the State all cases in which the State may be interested" in Harford County. Md. Code Ann., Crim. Proc. § 15-102. The Defendant SCOTT D. SHELLENBERGER is the State's Attorney for Baltimore County, Maryland, and as such, is tasked

with "prosecut[ing] and defend[ing] on the part of the State all cases in which the State may be interested" in Baltimore County. Md. Code Ann., Crim. Proc. § 15-102. The Defendant IVAN J. BATES is the State's Attorney for Baltimore City, Maryland, and as such, is tasked with "prosecut[ing] and defend[ing] on the part of the State all cases in which the State may be interested" in Baltimore City. Md. Code Ann., Crim. Proc. § 15-102. The Defendant COL. ROLAND L. BUTLER, JR., is the Superintendent of the Maryland State Police, and as such, "enforce[s] the laws and ordinances of the State, counties, and municipal corporation." MD Code, Public Safety § 2-301(a)(2)(iii). The Defendant, PAUL J. WIEDEFELD, is the Secretary of the Maryland Department of Transportation, and as such, is responsible for the administration and enforcement of provisions of law governing public transportation facilities owned or operated by or under the control of the Department of Transportation, Mass Transit Administration, including MD Code, Transportation, § 7-705. The Defendant, JOSH KURTZ, is the Secretary of the Maryland Department of Natural Resources and, as such, is responsible for the enforcement and promulgation of regulations issued by the Department of Natural Resources, including the regulations regulating weapons at State Parks, State forests, and State Chesapeake forest lands. All Defendants are sued in their official capacity. Defendants Moore, Butler, Wiedefeld, and Kurtz maintain their principal offices in Annapolis, Maryland. Defendants Healey, Shellenberger, Bates and Smith maintain their principal offices in the county or city in which they serve.

## THE SECOND AMENDMENT

34.     The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he Second Amendment extends, prima facie, to all instruments that constitute

18

bearable arms, even those that were not in existence at the time of the founding." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008).

35.     "[T]he Second Amendment guarantees a general right to public carry," meaning ordinary, law-abiding citizens may "'bear' arms in public for self-defense." *Bruen*, 142 S.Ct. at 2135. In *Bruen*, the Supreme Court held unconstitutional New York's "good cause" licensing requirement because a State may not condition the right to publicly carry handguns on a citizen's "special need for self-defense." *Bruen*, 142 S.Ct. at 2135 n.8. After *Bruen* was decided, Maryland promptly elected to stop requiring that applicants for a Maryland wear and carry permit demonstrate a "good and substantial reason" for a permit, as then required by MD Code, Public Safety, 5-306(a)(6)(ii), and SB1 repeals that "good and substantial reason" requirement in amendments made to Section 5-306(a)(6)(ii).

36.     The "general right to public carry" cannot be restricted absent "*exceptional* circumstances." *Bruen*, 142 S. Ct. at 2156 (emphasis added). This is because the Second Amendment "presumptively protects" carrying firearms. *Id.* at 2129. To determine whether a state's restriction is constitutional, the Court in *Bruen* explained that "the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S.Ct. at 2129.

37.     It is the State's burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127; *see also id.* at 2150 ("[W]e are not obliged to sift the historical materials for evidence to

19

sustain New York's statute. That is respondents' burden."). If the State fails to meet its burden, then the State's restrictions must be enjoined.

38.     The *Bruen* Court struck down as unconstitutional New York's "proper cause" requirement for issuance of a permit to carry a handgun in public. In doing so, *Bruen* explicitly rejected New York's attempt to justify its restriction as analogous to a historical "sensitive place" regulation. 142 S.Ct. at 2133-34. The Court explained that a state may not simply ban guns wherever people may "congregate" or assemble. A rule that "expand[ed] the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly." 142 S.Ct. at 2134. As the Court explained, "[p]ut simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." *Id.*

39.     If a state seeks to restrict firearms in a particular location as a "sensitive place," then it must prove that its current restriction is sufficiently analogous to "well-established and representative historical analogue." In *Bruen*, the Court identified only five such locations: "schools and government buildings" as well as "legislative assemblies, polling places, and courthouses." *Id.* at 2133, citing *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). *Bruen* held that the lower "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." *Id.*

40.     *Bruen* further establishes several requirements to determine whether a historical regulation is sufficiently analogous. First, the relevant time period for the historical analogue must be the Founding, centering on 1791. *Bruen*, 142 S.Ct. at 2135-36. That is because "'[c]onstitutional

20

rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S.Ct. at 2136, quoting *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008). 20th century and late 19th century statutes and regulations "cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S.Ct. at 2154 & n.28. Thus, restrictions on the right to keep and bear arms dating after the Civil War and after the adoption of the Fourteenth Amendment in 1868 may be confirmatory of earlier legislation but cannot be used alone to provide the appropriate historical analogue required by *Bruen*. In other words, only those restrictions with roots in the Founding are sufficiently "enduring" and "well-established" to comport with the Second Amendment's "unqualified command." *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

41.    Second, the historical analogue must be "representative." Historical "outlier" requirements of a few jurisdictions or of the Territories are to be disregarded. *Bruen*, 142 S.Ct. at 2133, 2153, 2147 n.22 & 2156.

42.    Third, the historical analogue must be "relevantly similar," which is to say that it must burden ordinary, law-abiding citizens right to carry in a similar manner and for similar reasons. *Bruen*, 142 S. Ct. at 2132. *Bruen* thus held that the inquiry into whether a proper analogue exists is controlled by two "metrics" of "how and why" any restriction was historically imposed during the Founding era. *Id.* at 2133. "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are "'*central*'" considerations when engaging in an analogical inquiry." *Id.* (emphasis in original). "[T]o the extent later history contradicts what the text says, the text controls." *Id.* at 2137. "Thus, 'post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the

constitutional text obviously cannot overcome or alter that text.'" *Id.*, quoting *Heller v. District of Columbia*, 670 F.3d , 670 F.3d 1224, 1274, n.6 (Kavanaugh, J., dissenting).

43.     Fourth, the historical analysis required by the Supreme Court is fundamentally a legal inquiry that examines legal history, which is appropriately presented in briefs. See *Bruen*, 142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "legal questions" that judges can address) (emphasis in original); see also id. at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling did not "depend on any of the factual issues raised by the dissent"). Accordingly, the required analysis does not require fact-finding by a court.

44.     The text of the Second Amendment, as authoritatively interpreted by the Supreme Court, indisputably covers possession (keep) and the wear, carry, and transport (bear) of firearms, including handguns by ordinary, law-abiding citizens. Beyond the five locations specifically identified by the Supreme Court in *Bruen*, the State bears the burden to demonstrate that there is an enduring, well-established, representative historical analogue to the restriction imposed by the government. And the historical analogue must be "relevantly similar" to the contemporary restriction imposed by the government, burdening the Second Amendment right in a similar manner and for similar reasons. Under this test established in *Bruen*, the State cannot meet its burden to justify that its bans on the wear, carry, and transport of firearms in or at the locations regulated by the challenged provisions of SB1, by MD Code, Transportation, § 7-705(b)(6), and by the Department of Natural Resources regulations.

## COUNT I -- SECOND AMENDMENT

### SB1 Violations of the Second Amendment Right to Armed Self-Defense

45.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint. This Count addresses violations of the Second Amendment to the United States

Constitution and is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, each of the Defendants have acted under "color of state law" within the meaning of Section 1983.

46.     The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme Court has squarely held that the Second Amendment bestows an individual right to keep and bear arms and that right may be exercised by all responsible, law-abiding Americans. *District of Columbia v. Heller,* 554 U.S. 570 (2008). The Second Amendment is applicable to the States as incorporated through the Due Process Clause of Fourteenth Amendment because the right to "keep and bear Arms" is a fundamental constitutional right essential to ordered liberty. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). In *Bruen,* the Supreme Court held that the Second Amendment right to keep and bear arms fully extends to general carry of arms in public.

47.     In *Bruen*, the Supreme Court articulated a framework for determining if firearms regulations are constitutional. It begins with the plain text. If the plaintiffs' proposed course of conduct falls within the Second Amendment's plain text, then "the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. The Supreme Court has defined all of the Second Amendment's key terms. "The people" means "all Americans"; "Arms" includes "all instruments that constitute bearable arms"; and, most relevant here, to bear simply means to "carry." *District of Columbia v. Heller*, 554 U.S. 570, 580–82, 584 (2008). "Nothing in the Second Amendment's text draws a home/public distinction," *Bruen*, 142 S. Ct. at 2134—or for that matter, any distinction between locations at all. That makes the Second Amendment unlike other Amendments. *See* U.S. Const. amend. III ("No Soldier shall, in time of peace be quartered in any house, without the consent

of the Owner, nor in time of war, but in a manner to be prescribed by law."); U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."). And it means that any locational restrictions on Second Amendment rights must come from history, not from the plain text.

48.     There is no "well-established, representative historical analogue" for the SB1 bans on firearms in and at (A), "health care facilities" as defined in MD Code, Insurance, § 15-10B-01(g)(1)-(4); (B) "a location licensed to sell or dispense alcohol * * * for on–site consumption;" or (C) "museums" as those terms are defined in and regulated by Section 4-111, as enacted by SB1. These bans imposed by Section 4-111, as enacted by SB1, are facially unconstitutional under the Second Amendment in so far as they ban the possession, wear, carry, or transport of firearms by permit holders at these locations.

49.     There are numerous "health care facilities" as defined in MD Code, Insurance, § 15-10B-01(g)(1)-(4), and the bans enacted by SB1 for these "health care facilities" extend across the board to visitors, employees, contractors, and health care professionals. Locations that are "licensed to sell or dispense alcohol * * * for on-site consumption" literally includes most restaurants, many private clubs, and locations operated by private associations in Maryland. There are thousands of such locations in Maryland and the bans at these places adversely affect virtually every permit holder who eats at restaurants or at private clubs. Under SB1, permit holders may not carry in such places, even if they do not consume a drop of alcohol or even if they enter such places merely to retrieve a carry-out order. These bans at such locations would also encompass events for which temporary, one-time licenses are granted, including at fund-raising events and events conducted outside. The bans imposed on carry by permit holders in and at "museums" is overwhelmingly applicable to private museums, of which there are many in

Maryland. See, e.g., https://bit.ly/40FkKPK. Under the "how and why" metrics established in *Bruen*, there is no "well-established, representative historical analogue" for banning "a person wearing, carrying, or transporting a firearm" at these locations.

50.     Likewise, there is no "well-established, representative historical analogue" for banning "a person wearing, carrying, or transporting a firearm" from entering "on property unless the owner or the owner's agent has posted a clear and conspicuous sign indicating that it is permissible to wear, carry, or transport a firearm on the property; or (2) enter . . .on property unless the owner or the owner's agent has given the person express permission to wear, carry, or transport a firearm on the property" as these provisions are defined in and regulated by Section 6-411(d), as enacted by SB1. These provisions of Section 6-411(d) are facially unconstitutional under the Second Amendment in so far as they ban the possession, wear, carry or transport of firearms by permit holders at these locations. The bans enacted by Section 6-411(d) effectively nullify the "general right" to carry in public as they preclude a permit holder from carrying into private property that is otherwise open to the public, including stores, shops, hotels, motels, restaurants, retail establishments, theatres and malls and other places of public accommodation throughout the State of Maryland.

51.     Each of the individual plaintiffs and MSI, SAF and FPC members with carry permits and who live in Maryland or who wear, carry, or transport firearms in or through Maryland are directly, substantially, and adversely affected by the foregoing violation of the Second Amendment. Such plaintiffs and MSI, SAF, and FPC members with wear and carry permits have, prior to the enactment of SB1 lawfully possessed and transported loaded firearms within the State at and in the locations that the challenged provisions of SB1 ban firearms. All the individual plaintiffs with carry permits intend to possess, wear, carry or transport firearms in one or more such locations in the

future. MSI, SAF and FPC have at least one member with a carry permit who has visited each of the locations challenged in this Count and each such member intends to wear, carry and transport firearms at such locations in the future. All these plaintiffs and MSI, SAF, and FPC members with Maryland carry permits have a reasonable fear of prosecution under SB1 if they do so.

## COUNT II -- SECOND AMENDMENT

### Violation of the Second Amendment Right to Possess and Transport Firearms in and at Mass Transit Facilities.

52.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint. This Count addresses violations of the Second Amendment to the United States Constitution and is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, defendants have acted under "color of state law" within the meaning of Section 1983 promulgating and enforcing MD Code, Transportation, § 7-705(b)(6).

53.     There is no "well-established, representative historical analogue" for the bans on firearms in a transit facility or transit vehicle owned or controlled by the Mass Transit Administration of the Maryland Department of Transportation as imposed by MD Code, Transportation, § 7-705(b)(6). Section 7-706(b)(6) is facially unconstitutional under the Second Amendment in so far as it bans the possession, wear, carry, or transport of firearms by permit holders on or at such mass transit facilities or transit vehicles.

54.     Each of the individual plaintiffs and MSI, SAF, and FPC members with carry permits who wear, carry, or transport firearms in Maryland and who use mass transit facilities owned or controlled by the Mass Transit Administration of the Maryland Department of Transportation are directly, substantially, and adversely affected by the foregoing violation of the Second Amendment. Specified plaintiffs with wear and carry permits have used such mass transit facilities in the past and

will do so in the future but have been forced to travel in and at such mass transit facilities disarmed because of MD Code, Transportation, § 7-705(b)(6). MSI, SAF, and FPC have at least one member with a wear and carry permit who has used such mass transit facilities in the past and will do so in the future. Such plaintiffs and members fully intend to possess, wear, carry, and transport firearms at and in such mass transit facilities and vehicles but reasonably fear arrest and prosecution under MD Code, Transportation, § 7-705, if they do so.

**COUNT III -- SECOND AMENDMENT**

**Violation of the Second Amendment Right to Possess and Transport Firearms in and at State Parks, State Forests, and State Chesapeake Forest Lands**

55.     Plaintiffs reallege and incorporate herein by reference all the foregoing allegations of this Complaint. This Count addresses violations of the Second Amendment to the United States Constitution and is brought pursuant to and arises under 42 U.S.C. § 1983. For purposes of this Count, defendants have acted under "color of state law" within the meaning of Section 1983 in promulgating, enforcing, or threatening to enforce COMAR § 08.07.01.04, COMAR § 08.07.01.14, and COMAR § 08.07.06.04, as issued and enforced by the Maryland Department of Natural Resources.

56.     There is no "well-established, representative historical analogue" for the bans on firearms in a State park, a State forest, or in a State Chesapeake forest, as imposed by COMAR § 08.07.01.04, COMAR § 08.07.01.14, and COMAR § 08.07.06.04, as issued and enforced by the Maryland Department of Natural Resources. These COMAR sections are facially unconstitutional under the Second Amendment in so far as they ban the possession, wear, carry or transport of loaded firearms in these locations by permit holders for self-defense.

57.    Each of the individual plaintiffs and MSI, SAF, and FPC members with carry permits and who live in Maryland and who visit a State park, a State forest, or a State Chesapeake forest are directly, substantially, and adversely affected by the foregoing violation of the Second Amendment. Specified plaintiffs with wear and carry permits have visited a State park, a State forest, or State Chesapeake forest lands in the past and will do so in the future. MSI, SAF, and FPC have members with carry permits who have visited a State park, a State forest, or State Chesapeake forest lands in the past and will do so in the future. The specified Plaintiffs and members of MSI, SAF, and FPC with a Maryland carry permit fully intend to possess, wear, carry, or transport loaded firearms at and in a State park, a State forest, or State Chesapeake forest lands for self-defense in the future but reasonably fear arrest and prosecution if they do so.

WHEREFORE, the Plaintiffs respectfully request:

A. That this Court issue a declaratory judgment that the specified provisions of SB1 are unconstitutional under the Second Amendment in so far as these provisions prohibit a carry permit holder from wearing, carrying, transporting, or possessing a firearm at the specified locations challenged in Count I, above and preliminarily and permanently enjoin the defendants Wesley Moore, Alison M. Healey, Scott D. Shellenberger, Ivan J. Bates, and Col. Roland L. Butler, Jr., from enforcing those provisions as against permit holders;

B.   That this Court issue a declaratory judgment that MD Code, Transportation, § 7-705(b)(6) is unconstitutional under the Second Amendment in so far as it prohibits a carry permit holder from wearing, carrying, transporting, or possessing a firearm in and at a transit facility or transit vehicle owned or controlled by the Mass Transit Administration of the Maryland Department of Transportation, as more fully set forth in Count II, above, and preliminarily and permanently enjoin defendants Wesley Moore, Paul J. Wiedefeld, Alison M. Healey, Scott D. Shellenberger,

Ivan J. Bates, and Col. Roland L. Butler, Jr., from enforcing those provisions as against permit holders;

C.  That this Court issue a declaratory judgment that COMAR § 08.07.01.04, COMAR § 08.07.01.14, and COMAR § 08.07.06.04, as issued and enforced by the Maryland Department of Natural Resources are unconstitutional under the Second Amendment in so far as these provisions prohibit a carry permit holder from wearing, carrying, transporting, or possessing a firearm in and at a State Park, a State forest, and State Chesapeake forest land, as more fully set forth in Count III, above, and preliminarily and permanently enjoin the defendants Wesley Moore, Joshua Kurtz, Alison M. Healey, Scott D. Shellenberger, Ivan J. Bates, and Col. Roland L. Butler, Jr., from enforcing those provisions as against permit holders;

D. That this Court award attorneys' fees and costs against defendants, as authorized by 42 U.S.C. § 1988;

E. That this Court award the plaintiffs such other and further relief as in law and justice they may be entitled to receive.

Respectfully submitted,

*/s/ Mark W. Pennak*

David H. Thompson*
Peter A. Patterson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com

Mark W. Pennak
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar # 21033

Matthew Larosiere*
6964 Houlton Cir
Lake Worth FL 33467
Larosieremm@gmail.com

*Application for admission *pro hac vice* to the Bar of this Court forthcoming.

Date: May 16, 2023                              *Counsel for Plaintiffs*