# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SUSANNAH WARNER KIPKE, *et al.,*
*Plaintiffs,*
v.                                                          No. 1:23-cv-01293-GLR
WES MOORE, *et al.,*
*Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHERINE NOVOTNY, *et al.,*
*Plaintiffs,*
v.                                                          No. 1:23-cv-01295-GLR
WESTLEY MOORE, *et al.,*
*Defendants*.


### OPPOSITION OF PLAINTIFFS *KATHERINE NOVOTNY, et al.,* TO DEFENDANTS' MOTION TO CONSOLIDATE

Plaintiffs Katherine Novotny, *et al.,* respectfully submit this opposition to the motion of defendants, Westley Moore*, et al.*, to consolidate the two above-captioned matters. For the following reasons, the motion should be denied.

1. First, while defendants assert that consolidation is necessary to "eliminate the possibility of inconsistent findings related to the constitutionality of the State's regulation of firearms" (Motion at 3), that concern is obviously misplaced in these cases. Both cases are assigned to the same federal District Court Judge, the Honorable Judge Russell. One can be confident that this Court will not render inconsistent rulings in the two cases. This reality effectively eliminates one of the major reasons for consolidation. See, e.g., *In re Boise Cascade Securities Litigation*, 364 F.Supp. 459, 461 (MDL Panel 1973) (ordering consolidation, noting that "only by placing both actions under the supervision of a single judge can we be assured that duplication of discovery and unnecessary expenditure of judicial time and energy will be avoided"). This Court need not

consolidate the cases to ensure that the cases are conducted in such a way that conserves the resources of the Court and of the parties.

2. Second, while the defendants grudgingly admit (without elaboration) that "there are some differences" between the two suits (Motion at 2), they assert that the *Kipke* and *Novotny* complaints will reply on "the same witnesses, allege the same misconduct and answer with the same defenses." Id. at 3. Not so. The overlap between the *Kipke* complaint and the *Novotny* complaint is restricted to bans imposed by Maryland in **six** areas: (1) privately owned buildings otherwise open to the public (2) State forests and State Parks, (3) mass transit owned or controlled by the Maryland Mass Transit Administration, (4) places licensed to serve alcohol for on-site consumption, (5) health care facilities, and (6) private museums. But at that point the similarities end. See, e.g., *Leopold v. DOJ*, 2021 WL 2073352 at *1 (D.D.C. 2021) (denying consolidation where "each case" was a "markedly different [in] scope.").

3. Specifically, the *Kipke* plaintiffs also challenge under the Second Amendment Maryland's bans on firearms at a **fourteen** other places, including in or at (1) a highway rest area, (2) public school property, (3) a preschool and prekindergarten facility, (4) the grounds of a private primary or secondary schools, (5) grounds under the jurisdiction of the Maryland Department of General Services, (6) a public museum operated by the Department of Planning, (7) grounds falling within the jurisdiction of the Maryland Racing Commission, (8) the Camden Yards Sports Complex, (9) a building owned or leased by a unit of state or local government, (10) a stadium, (11) an amusement park, (12) a racetrack, (13) a video lottery facility (casinos) and (14) within 1,000 yards of a demonstration in a public place. *Kipke* Complaint ¶ 50. The *Novotny* plaintiffs challenge **NONE** of these fourteen separate prohibitions. The approach of the two complaints is thus very different. The Second Amendment claims in the *Kipke* complaint are numerous and

broad, while the *Novotny* complaint is intentionally crafted quite narrowly. Plainly, the briefing required on the Second Amendment will be vastly different in each case. Discovery, to the extent any is necessary, will also be quite different. That is because the *Kipke* plaintiffs are challenging the actions and policies of multiple government agencies which are not at issue in the *Novotny* complaint. That the Office of the Maryland Attorney General will represent all these defendants is neither here nor there.

4. The differences between the two complaints do not stop at the Second Amendment claims. In addition to the Second Amendment claims alleged in Count I, the *Kipke* complaint also asserts a First Amendment claim under Count II, challenging, as a species of compelled speech, the signage requirement imposed by Senate Bill 1 on private property owners if they wish to permit firearms on their property. The *Novotny* plaintiffs make no such claim.

5. In Count III, the *Kipke* complaint asserts a Due Process vagueness claim. Count III challenges as unconstitutionally vague an existing provision of Maryland, MD Code, Public Safety, § 5-306(a)(6)(i), that allows the Maryland State Police to issue a wear and carry permit only if the person "has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a handgun a danger to the person or to another." The *Novotny* complaint does not challenge that provision and asserts no such vagueness Due Process claim as to any provision challenged in that complaint.

6. In Count IV, the *Kipke* complaint challenges, on Equal Protection grounds, that part of Senate Bill 1 and existing Maryland law that creates a special exception for retired law enforcement officers with respect to wear and carry permits. The *Novotny* plaintiffs raise no such Equal Protection challenge. In sum, the *Kipke* complaint will require extensive briefing on constitutional claims that are utterly absent in the *Novotny* complaint.

7. Third, consolidation will likely delay and thus prejudice the resolution of the Second Amendment claims presented in the *Novotny* complaint. Senate Bill 1, challenged in this complaint, goes into effect on October 1, 2023. Because their complaint was narrowly crafted, the *Novotny* plaintiffs have already filed a motion for a preliminary injunction covering *every* claim presented in the complaint, thus making it possible for this Court to render a decision prior to the effective date of Senate Bill 1. Such a timely decision is necessary to protect the constitutional rights of these plaintiffs. "The denial of a constitutional right, if denial is established, constitutes irreparable harm." *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987). As extended, defendants must file a response to that motion by June 28, 2023.

8. Under the Supreme Court's decision in *NYSRPA v. Bruen,* 141 S.Ct. 2111 (2022), the *Novotny* motion for a preliminary injunction presents purely legal questions that can be definitively answered by briefing. See *Bruen*, 142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "*legal* questions" that judges can address) (emphasis in original); see also id. at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling did not "depend on any of the factual issues raised by the dissent"). In contrast, the *Kipke* plaintiffs have not yet filed a motion for a preliminary judgment and, because of the number and complexity of the claims brought in the *Kipke* complaint, the *Kipke* plaintiffs may well reasonably elect to employ a different litigation strategy than the *Novotny* plaintiffs. Neither set of plaintiffs should be held hostage to the other on such matters. Certainly, there is no reason to hold up resolution of the narrow *Novotny* complaint until all the many claims presented in the *Kipke* complaint are resolved.

9. Because only legal questions are presented in the *Novotny* complaint, this Court might well find it advantageous to give notice and enter a final judgment on the merits of the *Novotny* motion for a preliminary injunction, or soon thereafter, and thus dispose of the entire case

expeditiously. Indeed, because an order on a preliminary injunction motion is immediately appealable as of right, 28 U.S.C. § 1292(a)(1), the Fourth Circuit might well elect to do so on any appeal. See, e.g., *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1394 (7th Cir. 1992) ("When the appeal from a preliminary injunction brings up dispositive issues of law that can be decided without a trial, the sensible course is to convert the preliminary-injunction proceeding into a permanent-injunction proceeding and go directly to the merits."); *Wrenn v. D.C.*, 864 F.3d 650, 667 (D.C. Cir. 2017) (ordering the entry of a permanent injunction on an appeal of a preliminary injunction order, holding that "the merits of the plaintiffs' [Second Amendment] challenge are certain and don't turn on disputed facts") (collecting cases). In contrast, the many and varied constitutional claims presented in the *Kipke* complaint present complexities that may make that expeditious approach more difficult.

## CONCLUSION

For all the foregoing reasons, defendants' motion to consolidate should be denied.

Respectfully submitted,

/s/ David H. Thompson
David H. Thompson*
Peter A. Patterson*
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com
ppatterson@cooperkirk.com

Counsel for Plaintiffs

Matthew Larosiere*
6964 Houlton Cir
Lake Worth FL 33467
Larosieremm@gmail.com

/s/ Mark W. Pennak
Mark W. Pennak
MARYLAND SHALL ISSUE, INC.
9613 Harford Rd
Ste C #1015
Baltimore, MD 21234-21502
mpennak@marylandshallissue.org
Phone: (301) 873-3671
District Court Bar # 21033

Counsel for Plaintiffs

Counsel for Plaintiff MSI

*Admitted Pro Hac Vice